

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Penrose Metcalfe
Chairman, Senate Committee
Austin, Texas

Dear Senator Metcalfe:       Opinion No. O-6276

Re: Construction of Senate Resolutions Nos. 35 and 103, passed at the Regular Session of the 48th Legislature, with respect to public schools

We beg to acknowledge receipt of your letter with respect to the above subject matter, as follows:

"As Chairman of the Senate Committee, appointed under authority of Senate Resolutions Nos. 35 and 103, passed at the Regular Session of the Forty-eighth Legislature, which read respectively as follows:

"'Whereas, The State of Texas is expending for free textbooks to be used in the public schools from $1,500,000 to $2,000,000 each year; and

"'Whereas, There are now pending before the Legislature several bills proposing to alter the subjects in adoption, and the method of administration in the purchase and distribution of textbooks; and

"'Whereas, It is desirable that the Legislature acquire impartial information concerning the efficiency and compatibility of the administrative methods now prescribed by law, and concerning the costs and use of text books, and such other data as may be needful to assist the Legislature in determining whether to continue or to change present laws and provisions relating to the purchase, distribution and use of free textbooks in the public schools of this State; now, therefore

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"'Resolved by the Senate of the State of Texas;

"'Section 1. That the Lieutenant Governor be, and he is hereby authorized to appoint a committee of five Members of the Senate to sit at such time and places between this date and the date of the adjournment of the Regular Session of the Forty-eighth Legislature, as may to said committee seem necessary and proper; and to inquire into any other affairs and activities of governmental departments, institutions, persons, firms or corporations of whatever kind and character, as such activities in any way affect the situation above set forth, and shall have authority to investigate and inquire into such matters.

"'Sec.2. That said committee shall have the power to formulate its own rules of procedure and evidence, and to provide for its own hours of meeting, recessing, and adjournment. Provided, however, that the rules of evidence to be followed shall be practically the same as followed in the courts of this State, and the committee is authorized to hold executive sessions, within its discretion, and then the committee may be governed by the rules of evidence applicable to any grand jury inquiry in this State.

"'Sec. 3. That the majority of the membership of the committee shall have power to issue process for witnesses to any place in this State, and to compel their attendance, and produce all books and records, and upon disobedience of any subpoena the said committee shall have the power to issue attachments which may be addressed to and served by either the sergeant-at-arms appointed by said committee or any sheriff or any constable of this State; and said committee shall have authority to cite for contempt any one disobeying said process and to punish for such contempt in the same manner as provided for by general law. Said committee shall have power to inspect and make copies of any books, records, or files and any and all other in-

struments and documents pertinent to the matter under investigation by said committee, and shall also have power to examine and audit the books of any person, firm, or corporation having dealings with departments and institutions under investigation by said committee. The committee shall have power to administer oaths and affirmations and fix the bonds of attached witnesses; and the committee shall further have all the powers necessary in order to accomplish the purposes for which it is appointed. Three Members of such committee shall constitute a quorum for the transaction of official business.

"'Sec. 4. The witnesses attending under process shall be allowed the same mileage and per diem as is allowed witnesses before any grand jury in this State.

"'Sec. 5. Said committee shall have power and authority to employ and compensate all necessary investigators, auditors, clerks, stenographers, and any other necessary employees, and it shall be the duty of said committee to make and keep a record of its investigations.

"'Sec. 6. That said committee may call upon the Attorney General's Department, Auditing Department, and all other departments for assistance and advice; and it shall be the duty of the Attorney General's Department to render opinions, give counsel and assistance to said committee on request of chairman or Members of said committee.

"'Sec. 7. That said committee shall submit a report in writing to this Legislature at the earliest practicable time, and make such recommendations as it may choose to make. The compensation and expenses herein provided for incident to the work of such committee shall be paid out of the appropriation for mileage and per diem and contingent fund of the Forty-eighth Legislature and out of any fund otherwise appropriated by said session of said Legislature for such purpose, upon

Senator Penrose Metcalfe - page 4

sworn account of persons entitled to such
pay, when approved by the chairman of said
committee; and sufficient money is hereby
appropriated out of the mileage and per
diem and contingent fund of said Forty-
eighth Legislature to meet the payment of
such per diem and expenses of the Members
of said committee, witnesses, fees, and
other expenses incident to said investiga-
tion.

"'Sec. 8. Said committee may include
in its report its recommendation of any
legislation that should be enacted or other
action that should be taken.'

***********

"'Whereas, The committee appointed un-
der authority of S. R. No. 38 to investigate
the free text book situation in Texas has
made good preliminary progress towards its
objective; and

"'Whereas, These investigations have
developed a real need for further study of
the entire matter to the end that proper
laws may be drafted to solve this perplex-
ing problem; now, therefore, be it

"'Resolved by the Senate of Texas, That
this committee be continued after adjourn-
ment of the Legislature and that it be di-
rected to study and investigate the situa-
tion as to free text books and such other
matters affecting the schools of Texas as
in its wisdom it may see fit and make its
recommendations thereon to the next Regular
Session of the Legislature, and that in
carrying out the direction herein contained
that the said committee shall have and exe-
cute all powers and authority granted and
vested in it under the provisions of S. R.
No. 38 and this resolution.';

Senator Penrose Metcalfe - page 5

"I have called the Committee together to investigate the differences that have arisen between the Board of Regents of the University of Texas and the President of the University and the Faculty, with the idea of determining what legislation, if any, may be needed to define more clearly the prerogatives, authority, and duties of the Board of Regents and the administrative officers and the Faculty of the said University; and to prevent, if possible, a recurrence of disagreements over conflicting authority; and to determine whether or not additional legislation may be necessary to further define the duties and qualifications of the Members of the Board of Regents and the President; and to study the advisability of such legislation as may be necessary to promote the welfare of the University, the largest school in Texas, to the end that it may become a university of the first class as ordained by the Constitution of the State of Texas.

"The authority of this Committee, under the aforesaid resolutions, to investigate these and related matters has been questioned; and we desire your prompt opinion as to whether or not we can immediately proceed to investigate the matters aforesaid under authority of the Resolutions as set forth herein."

It is academic to say that all public officers in this State are clothed with such powers only as are conferred upon them by law, either expressly or by necessary implication. It therefore becomes necessary for us to consider Resolutions Nos. 35 and 103 quoted by you, to determine whether or not the power of your Committee, under these Resolutions, includes the particular investigations inquired about in the concluding portion of your letter.

A resolution by the Senate, like a bill when passed is to be construed liberally with a view to effectuate the purpose of the body passing it.

Unlike a bill, as contradistinguished from a resolution, however, the investigation is not embarrassed by the constitutional requirement of title

Section 35 of Article III of the Constitution, declaring that: "No bill (except general appropriation bills, which

may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title * * *", relates to bills only and not to resolutions. So that, our inquiry is in that respect narrowed so as to eliminate any question of constitutional validity.

"The characteristic feature of a resolution is its enacting clause, 'Be it Resolved;' were any other term used, it would cease to be a resolution." -- State v. Delesdenier, 7 Tex. 36, 1c 48.

So that, we are to construe resolutions as a whole, giving to the "Whereas" clauses their proper consideration in discovering the senatorial intention. Such portions, however, have no legally controlling effect over other portions.

In Terrell v. King, 14 S. W. (2) 786, Mr. Justice Greenwood, for the Supreme Court, said:

"The authority of each house to use legislative committees of inquiry and investigation is affirmed in Cooley's Constitutional Limitations (8th Ed.) at p. 278, where the author says:

"'Each house must also be allowed to proceed in its own way in the collection of such information as may seem important to a proper discharge of its functions and whenever it is deemed desirable that witnesses should be examined, the power and authority to do so is very properly referred to a committee, with any powers short of final legislative or judicial action as may seem necessary or expedient in the particular case.'"

The Justice, speaking more concretely, further said:

"* * *. The Senate and the House are separate bodies, charged with duties, most of which are to be performed by each house separately, despite the fact that the concurrence of both houses is requisite to enact laws or certain resolutions. In declaring, in section 11 of article 3, that "each house may determine the

Senator Penrose Metcalfe - page 7

rules of its own proceedings,' the Constitution plainly delegates to each house the choice of methods for the most advantageous use of its functions in the exercise of the State's 'legislative power,' which Mr. Cooley defines as 'authority under the Constitution to make laws and to alter and repeal them.' Cooley's Constitutional Limitations (8th Ed.) p. 183. Having such choice of methods, each house is fully authorized to appoint committees to make investigations and conduct inquiries and gather information with respect to the operation of subsisting laws and the need for their improvement, alteration, or repeal. McCullouch v. Maryland, 4 Wheat, 409, 4 L. Ed. 579. Not only does the Constitution, in the grant of the rule-making power, authorize either house to name such committees as it may deem necessary or proper for purposes of investigation and inquiry, when looking to the discharge of any legitimate function or duty of such house, but the Constitution goes further and makes consideration by a committee a condition precedent to the enactment of any law. Section 37, article 3.

"Since each house continues in existence after the end of a legislative session, as determined by Ferguson v. Maddox, 114 Tex. 93, 95, 96, 263 S. W. 888, and since each house is invested with independent responsibilities and duties, and is the sole judge of its own rules of procedure, we think the power of each house or of the Legislature cannot be denied to name committees to sit, either during sessions of the Legislature or in recess, for the purpose of gathering information considered requisite or helpful to enlightened or efficient legislation."

The case of McGrain v. Daugherty (U.S.) 71 Law Ed. 580, is quoted as follows:

"'A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change; and where the legislative body does not itself possess the requisite information -- which not infrequently is true--

Senator Penrose Metcalfe - page 8

recourse must be had to others who do possess
it. Experience has taught that mere requests
for such information often are unavailing, and
also that information which is volunteered is
not always accurate or complete; so some means
of compulsion are essential to obtain what is
needed. All this was true before and when the
Constitution was framed and adopted. In that
period the power of inquiry -- with enforcing
process -- was regarded and employed as a neces-
sary and appropriate attribute of the power to
legislate; indeed, was treated as inhering in
it. Thus there is ample warrant for thinking,
as we do, that the constitutional provisions
which commit the legislative function to the
two houses are intended to include this attri-
bute to the end that the function may be effec-
tively exercised.'"

This department has given many opinions uphold the
validity, and construing in various respects, legislative reso-
lutions appointing committees of investigation in aid and fur-
therance of their legislative duties, among which are Opinions
Nos. 0-98, 0-939, 0-6243, 0-933, 0-6067 and 0-5538, some or all
of which may be helpful to you, copies of which opinions we
hand you herewith.

After a careful study of the two resolutions together,
it is the opinion of this department that your Committee does
have full authority to make the investigations mentioned in your
inquiry with respect to the University of Texas and the Regents-
President controversy that has recently arisen.

We are constrained to this conclusion by the considera-
tion of the two resolutions as a whole, and especially by that
portion of Resolution No. 103, declaring, "Resolved by the Senate
of Texas, that this Committee be continued after adjournment of
the Legislature, and that it be directed to study and investigate
the situation as to free textbooks, and such other matters affect-
ing the schools of Texas as in its wisdom it may see fit, and
make its recommendations thereon to the next regular session of
the Legislature."

Now, undoubtedly, the University of Texas is included
in the broad language "the schools of Texas". Indeed, it is the
highest, greatest, and in many respects, the most important insti-
tution of the many schools of Texas. It is to the schools of
Texas what the Constitution is to the acts of the Legislature --

the supreme component part.  Whatever affects the University
of Texas affects in some degree every lesser State institution
and public free school in the State -- every school.

Again, our conclusion is accentuated by the express
power conferred by Resolution No. 35 as follows:

"* * * and to inquire into any other affairs
and activities of governmental departments, insti-
tutions, persons, firms or corporations of what-
ever kind and character, as such activities in any
way affect the situation above set forth, and
shall have authority to investigate and inquire in-
to such matters."

The Committee having begun but not having finished
its task was by Resolution No. 103 continued over with all
the powers conferred by Resolution No. 35, and in addition
thereto the further power to investigate "such other matters
affecting the schools of Texas as in its wisdom it may see
fit".

Trusting that what we have said sufficiently answers
your inquiry, we are

Very truly yours

APPROVED NOV 16 1944                    ATTORNEY GENERAL OF TEXAS

TTORNEY GENERAL OF TEXAS      By

                                        Ocie Speer
                                        Assistant

OS-MR

Enclosure